and it's case number 4 1 1 0 5 1 2 n ray p l n l l for the appellant we have allen novick and for the appellee anastasia brooks mr novick may it please the court and counsel um just briefly the facts of this case this termination case are not unusual at least as we begin there's a shelter care hearing in september of 08 two allegations in the petition for adjudication of worship i represent richard loxton and he had the fortune or misfortune of having children with two different women both of who had already been found to be unfit in a is mom a is unfit because she is unfit in another case and mom b is unfit because she is unfit in another case no allegations against mr loxton although the shelter care report did reflect the fact that when he was a teenager he had committed an act a a sexual abuse act when he was a teenager was placed on probation was ordered to complete sex offender treatment and the doctor read sex uh probation successfully completed despite all that at the shelter care hearing dcfs leaves the children with mr loxton at that time mr loxton was not the world's most cooperative fellow let me be honest with you and i like to think that the process the integrated assessment followed by the service plan process did great things for richard loxton i believe that you would find that he was hostile with authority figures didn't have much education so he either worked long hours or spent a lot of time looking for meaning fairly menial jobs and the second lady that he had a child with had a a conviction for killing her own child and at that point in time he didn't believe it he didn't believe that she was responsible for her son's death and he also minimized his role at one point in time in an inadequate supervision case with one of his other children so the process as they evaluate him decides that he needs cognitive behavioral therapy the hostility needs to go as a parent you need to be able to work with authority figures which is not terribly surprising to us but it was to him in any event he has the children keeps the children for about 10 months and this is before the counseling really took effect he's not nice to his caseworker he's leaving the kids in daycare for a long time and he takes the oldest child off riddland because he didn't think she needed it found unfit at a at a permanency hearing and the kids are placed in foster care children are placed in a succession of foster care foster placement number one was going to work was not going to work because the family decided we have too many kids already and so the two children are placed in foster family number two foster family number two decides they like that little boy he is cute he is too he and they dump her that sets up the what i will ask you to consider as the best interest issue later on in any event um about 15 months into this mission the department decides although it appears richard has completed sex offender treatment as a as a teenager the uh he's given a psychological they do psychologicals because the one mom had murdered her child and she wasn't acknowledging anything was going on and so they give him a psychological evaluation and in the psychological evaluation they decide well he could use sex offender treatment again what the heck we could all use it and so as the result he is asked to do that lo and behold as time goes on we we arrive at termination the judge the guardian ad litem and i all agreed that he had done all of his counseling he had done his parenting classes he was cooperative with the department did not complete the new round of sex offender treatment no doubt about it so we come to termination and the uh caseworker testifies three of the four goals he's satisfactory fourth goal he's not um the counseling reports were admitted to show that he had learned and he had learned about communicating he had learned about dealing with authority figures and as a result the caseworker says he does he's a nice guy he's cooperative with me but he didn't redo the sex offender treatment so she was asked miss rushton if you're an alcoholic and you do alcohol treatment and you don't have a drink for 20 years you got to do it again no if you have domestic violence and problems and you go ahead and you do your dv treatment and you don't have another dv incident do we make you do it again no apparently this is different the next witness who testifies is uh is the sex offender evaluator dr sheer and he says i give him a test and there's no indication of sexual dysfunction or leaning toward sexual offending no diagnosis of pedophilia there was a diagnosis of child abuse because he had abused a child almost 20 years before he decided that richard needed sex offender treatment regardless and then he was asked what did you look at what underlying documents did you look at did you look at the plans did you look at the visitation records did you look at the integrated assessment no didn't look at any of those could those things have changed your mind if the department hadn't stacked the deck and given you half of the story well anything's possible is the fact that there have been no offenses since the first defense is that to tell you mr doctor shared that the treatment might have worked well yeah i guess it could work he hasn't had an offense in 20 years he had had one offense in 20 years he had a speeding ticket in the next 20 years but he had no other traffic violations no misdemeanors no felonies he then opines that he he didn't have all the information because he was given a couple of tests in the office but it's it's very expensive to do these tests in the office so the rest of the tests are take-home tests and uh the take-home tests were not completed at first they were eventually completed he concluded that richard needed sex offender treatment and he did not complete he went to some sessions he told his caseworker that some of the stories made him sick and then the doctor shared repeated in class in front of the other sex offenders that guy says some of these stories make him sick that's what richard testified to when the sex offender uh evaluator was asked that question he said i don't remember if i said that or not by the way the department was making him drive 45 minutes one way to get the sex offender treatment there was a place in town but they decided they wouldn't pay for that one richard did testify at the termination hearing and he testified i did a sex offender evaluation in 1991 with phil foster catholic charities they were the pos agency that did the sex offender treatment i successfully completed it i successfully completed probation the juvenile delinquency file was asked for judicial notice and it says successfully discharged from probation nobody could find any records judge fitzgerald ruled on the unfitness issue he did complete most of his service plan but he didn't do the sex offender treatment and even if he did a long time ago it was before somv treatment was available and because he didn't do that treatment he didn't make reasonable progress we're now at best interest for the case worker testifies again and the question was asked these children have been placed separately now foster parent wanted the little child didn't want the other child so we've now placed the older child of one that is not as young and we don't have an adoptive placement yet we were going to try to find one for both kids but the trial court said you know he seems to be doing well in this placement let's leave him there i'm not going to order you to leave him there i find that it's in his best interest that he stays there because the foster parents that's what they asked for testimony at the at the best interest hearing everybody says these children are bonded to each other everybody except the casa case worker says they're bonded richard says they're bonded two of his witnesses his late witnesses said they're bonded and the most important witness is the habilitation worker because richard was cantankerous at first they give him thank you very much dcfs we appreciated an habilitation worker a worker that's going to come to the visits and not only just supervise visits not just be a caretaker but a teacher and she was a darn good teacher and she taught him empathy and she taught him child safety and she knew what he was taking in counseling and so she tried to determine if he learned in counseling and jennifer slater said he was doing wonderfully she had viewed more than a hundred visits two hours a visit this lady had some time in grade with this family and she said these kids are bonded to richard and these kids are bonded to each other so of course we asked the case worker well what did you do to try to preserve this kids together well we offered her we offered the foster moms of counseling but she was too busy i said did you try one two three magic no what's one two three magic well that's a very common technique we use to try to train parents to be better parents to be very consistent to telegraph their punches and i did it with my kid and he would look at me and go stop counting me stop counting me because it really works because you count the children i then said to the case worker did you try uh um love and logic another very common technique now we didn't do it did you try did you try theraplay no we didn't do it what did you do to try to preserve the placement they didn't want this other kid we didn't try to preserve the placement and then i handed her her own regulation 301.70 which is in your in your appendix and i said did you violate that part of the regulation yes i did yes we did did you violate this part of the regulation yes we did so without any evidence that we have done anything to preserve this placement what's what what does best interest mean well let's go back to the definition of best interest and i tried to do that at the at the termination hearing and when you look at 705 ilcs 1-3 the definition of best interest it's those terms are fraught with sibling bonds so the foster parent testified and she said i just wasn't trained to handle that unruly child it's best that it's it's in the little kid's best interest that the big kid doesn't live with us that was her conclusion now the guardian ad litem also elicited from her that the foster parent was not given any program book or video to maintain the placement so richard has a couple of witnesses come in lay witnesses who know the family and said i've been with his family i've been with these children there's a bond with richard there's a bond between the children the habilitation worker testifies about the same thing the casa testified that she had one sentence in her report about sibling visits and when asked about the sibling bond she said i don't understand what a sibling bond is i've grown very accustomed to very competent casas unfortunately didn't have one here one of the reasons richard did well is was because he was well trained by his counselor and by his habilitation worker and there were some behavioral problems with the older child and the light went on and he said you know my kid really likes the disney princesses and he goes out and he finds a disney princess calendar and he then starts using that as a behavioral chart you get stickers when you go ahead and you're a good kid at school and when you're a good kid at visit and the testimony was from the habilitation worker and richard this kid wanted those stickers so we have a situation where the uh richard is able to control the behaviors of his child the foster parent that wanted just a little child couldn't but when that older child was placed with the next set of foster parents who did have some experience they don't have any problem with her despite that the foster parent of the little child refused to take the elder child back part of guarding that little flight of exhibit number one is a letter from the the child's abc counselor and it says i want to return to my daddy's home does that tell me there's a bond with dad in that best interest sense i believe so she looks forward to visits with her father and brother does that tell us that there's a sibling bond i believe that good case work beats good lawyering most of the time this isn't good case work this is horrible case work it's destroying the sibling bond we can't let them get away with that that's what i'm going to ask you to find when judge fitzgerald reviewed the statutory best interest factors for the older child they were he says they're more toward non-termination but because he didn't do his sex offender treatment there really is no chance of permanency and i find that he must be terminated they were a little more toward the other side of the equation with the younger child but once again he says sibling bond that's not important to me what's important to me is the bond between the caretaker and i have cited some cases and the best intersection of the brief which says you can't just look at one or two of those statutory factors you got to look at all of them you certainly shouldn't ignore the sibling bond factor it would be different if there was any hint that richard was a threat to his children especially in the sexual sense dcfs never said there was a hint 20 years later so the question becomes in a legal sense we've we've cited a couple cases one of them was the the supreme court case in dw and the appellate court case that led up to it in amanda d and in amanda d um it states you know when you have one of these and that case was different because that case involved a situation where there is you commit this crime you're unfit end of discussion maybe we'll let you make some arguments or present some evidence but what are we looking at and what we're looking at is the passage of time without a similar incident 20 years the circumstances of the crime he was a young teenager and even dr sheer said not every kid that commits a sex offense as a young teenager goes on to becoming a pedophile look there are many other factors you have to look at and some of them were the test factors where richard scores low and one of the factors was he hasn't done anything in 20 years the last issue is the parents rehabilitation efforts there was evidence that he did the sex offender treatment as a child and in addition he did the rest of his service plan that's what the caseworker testified that's what the gal agreed to and that's what the judge found um i'll start getting redundant so i appreciate you and the reason he refused to do the treatment was as i understand it now says that he was not guilty of the offenses that he pled guilty to 15 years ago that is what he testified to your honor and i think his testimony was that even if many couldn't get his children back he still wasn't going to do that treatment i might be generalizing a little bit too much should that be a concern to the trial court into us i can certainly understand that a concern he testified that the police officer he said coerced him into into confessing he ended up despite the fact that he did confess there was a trial he is found guilty it's clear that he successfully completes probation and does treatment you know i don't know if this is a good analogy but i take people to springfield all the down the streets of the secretary of state because they've had one or two or three or more too many buis and if they're level three what they must testify to is i don't drink i have a sponsor i work the steps and i've integrated the steps into my heart i can tell you that people do those things and then sometimes tell me but i still don't believe i have a problem i've just decided i'm not going to drink and have i done all these other things sure i'm not sure if that's a good analogy or not but that's been said okay you'll certainly have rebuttal thank you very much miss brooks may it please the court and counsel my name is anastasia brooks and i represent the people in this case first of all the both of the issues as to reasonable progress the best interest review deferentially and the and the respondent father has a burden of showing that the findings were against the manifest weight of the evidence so with that standard in review stay review in mind as to reasonable progress finding it was the fact that respondent father's progress was stuck at supervised visitation and that wasn't going to go any farther until he could demonstrate progress with sex offender counseling his inability to proceed with counseling i think he attributed to a situation where he he was disgusted by something he heard in the group does the reasonableness of the requirement have any bearing on that analysis the well the next part of my of my uh argument was was his yeah his issue about uh due process and whether he should even have been required to do that and it's a situation where if there is if a deficient if a printing a parenting deficiency prevents the return of the child it can it can be a condition that could give rise to a neglect finding and so the dcfs cannot arbitrarily demand things of parents and then if they fail to do that then the court would then find them to be unfit that's not here here's the the genesis of my question i mean when the dad had these children for 10 months under the supervision of dcfs right yes and at the very beginning of his sole custody these children dcfs knew about his 20 year old adjudication as a juvenile for a sexual offense i i think that's true if it's in if it's in the best interest in the shelter care report i think it was okay so they do but they didn't know he was a denier of having offended which puts him in a totally different category of being amenable to treatment because that's that is the big thing if a person is not in denial of a problem like like being a sex offender or being an alcoholic it makes it impossible for them to get successfully treated and and that was perhaps the key fact that may not have been known at the time that he he claimed that he's already successfully completed treatment but yet there's no documentation as to what there was no denial until they imposed the condition newly that imposed the condition my point is they knew he had this allegedly at least had this problem 20 years prior as a 15 year old knew all about they had no qualms about it all right put the kids with him for 10 months no qualms whatsoever then due to other factors having nothing to do with the juvenile conviction 20 years before they say now we got to take your kids from you and put them into foster care and now they they come up with another condition to get the kids back you've got to go back to how the department can leave the kids with him for 10 months knowing everything that there was to know about that offense and the treatment he had for the offense and then when they he tries to get them back into his care they erect this new barrier that didn't exist when they left the kids with him and i understand the argument is that that this is somehow some sort of artificially stumbling block to his progress but i i won't say it's art it's artificial i would say you know and if you look at the chronology of this and knowing what dcfs knew then and knowing what dcfs did now it doesn't make any sense but it would make more sense if we piece together that mentioned which is the the evaluation and when there's due process argument is broken down into the separate claims which it should essentially be he would say it violates due process for the trial court to order me to get an evaluation for sex offender treatment essentially he's trying to that that would violate due process for the court to even say you have to go get an evaluation that was what he has to show and then when we get an evaluation and we have a psychologist who opines that he has to go through treatment again primarily for the reason that he's in denial maybe but if you if you look through his evaluation and and dr shearer's testimony and if there's nothing on the other side if the defense hasn't gotten its own expert to say that he doesn't need treatment if he went through his own evaluation through a different psychologist and got a different psychologist to disagree but even then the trial court would have at least some evidentiary basis and if this court would have to defer to the trial court determination that yes respondent father you have to go through treatment again and in light of the fact that a psychologist clinical psychologist who has evaluated respondent who's now learned that he's in denial who now says it's been 20 years and we don't know uh what the trial court points out we don't know the extent of his prior treatment because there's no documentation we know there's this new thing called the sex offender management board and treatment has evolved since 20 years ago it would be necessary for him to go through that treatment again is that decision at that point in time once the evaluation has been done and once there is the clinical cycle a psychological opinion does that violate due process then according to the respondent father to to make him go through treatment so i think that it has to be deconstructed at each point in time is the decision to require him to get an evaluation violate due process at that point in time with what is known and does the decision require him to go to treatment violate due process with what is known at that point in time and the fact that dcfs had had permitted him to keep the children for 10 months knowing that he had a prior offense in his history here the trial court it wasn't a statutory rape situation where a trial court might look at 15 years ago someone had a statutory rape and there was no question as to the treatment that's not necessarily going to keep a person from getting their children the trial court here reasonably and logically emphasized the severe nature of these allegations and the fact that now the respondent has very young children of similar ages of the ages that he had offended against many many years ago so i i think when those uh extra factors are considered the respondent cannot show that it violated due process to both order the evaluation and then order additional treatment so for those reasons this really is apparently a case where i know there were some other issues along the way but the primary reason and pretty much the only reason why he has been deemed unfit is his lack of cooperation with the ordered sex offender treatment and that was necessary and by failing to do that he is not fully complied with the directives directives that could be and were validly imposed and because he failed to comply with those directives that makes him unfit according to the statute so that was uh what if he really didn't do it 15 years ago he's telling the truth what's this is it i mean is it right for us to say you've got to admit it even if you didn't do it because that's the only way you can successfully complete treatment by not denying i understand it's almost like the truth doesn't really matter we got a format here that you're going to follow the protocol don't treat that window this is it you don't dig these kids i mean it's a concern i i understand that concern but in this case this is a court of review and the defendant and the respondent father is not here to testify and it's a situation where the trial court heard that testimony and it could assess for itself the the credibility or lack thereof respondent father's claims that he had had been coerced by a police officer to confess and if the trial court doesn't have to accept those claims as being true and could disbelieve them and the situation uh could be that what the trial court is then left with is the fact that he had in fact been convicted uh at least adjudicated i'm sorry i have to correct myself it was a juvenile case he had been in fact adjudicated beyond a reasonable doubt so in other words if if he had gone to an adjudicatory hearing and he had disputed the truthfulness of of the allegations that he had truthfully confessed a police officer and those were rejected 20 years ago essentially a trial and he's trying to deny it now but if it's been proved beyond a reasonable doubt and a trial court doesn't have to believe his current denials today it's not a situation where just because somebody made an allegation against him now now he has this burden of admitting it or losing his children i mean it's it's a different situation where he had in fact confessed he had in fact been adjudicated beyond a reasonable doubt and now he's trying to come up with justifications for why all those events had happened the way they did and that and that's something that that he's got to convince the trier fact of and if we were appealing it was a totally different situation but he's the appealing party and and if the trial court didn't buy it then then this court shouldn't be bound to accept the credibility of his denials of having offended so it's not it's not placed in this untenable situation he he was properly put to admit this and complete your treatment or you will lose your kids and that was the situation he found himself in but was not the making of dcfs or the trial court it was the fact that he was in fact an adjudicated sex offender that who needed treatment for the the opinion of the clinical psychologist so uh even dcfs the the caseworker shall rest and testify this was a very large safety issue uh even if he had not reoffended in 20 years and that was her testimony and and and it the fact that dcfs had in fact permitted the children to remain with him for 10 months i think at the time she testified being to that it was in fact at that point in time a very large safety issue perhaps for the largest reason that he was now in denial of being an offender so uh with that respect manifest it's not against the manifest weight for the unfitness finding and the the due process violation has not been established um so it's distinguishable the case that he cites where somebody fathers a child um with uh somebody and now is denied contact on the basis of that so it's not a statutory type situation so that's different uh the claim that there's no hint that he was a threat to reoffend i think there was uh might have been some reference in the record to actuarial studies or evidence of likelihood of reoffending after so many years so there is always some likelihood of reoffending on an actuarial basis uh so to say that that there was no hint of a threat is is incorrect and the the recommendation for value uh in the evaluation for more treatment was not arbitrary there has there had been some basis for it and the fact that he was successfully discharged from probation doesn't mean that that he's not going to be a threat today as far as the best interest it was proper for the trial court to emphasize the need for permanency but the testimony of the court appointed special advocate donna bell and case both children need the stability in their lives and the guardian ad litem also recommended termination let's say two and a half was the chance for foster parents who are willing to adopt that one is not close the only close one was paris and when it's close this court should defer because it's not going to be found the best interest finding is not going to be against the manifest weight of the evidence in the close case the the benefit of termination was that she could become free for adoption even though she wasn't currently in an adoptive home and the reluctance was to move her again because she had been moved before so they didn't want to unnecessarily move her to an adopted home until she became free with termination paris became free and that could go forward there's no showing i think that that the trial court had ignored any statutory factors for best interests and and the fact that that the paris was indeed bonded with both the sibling and respondent father by itself is not going to compel a determination that the interest finding was against the manifest weight of the evidence and as to the dcfs regulations on sibling placement there's no showing that that that or either uh what the respondent father characterizes as poor casework which we're not conceding uh but but at least even if that were the case that any regulations were violated that's not any ground for overturning a termination order at least there's no showing or authority uh offered by the respondent father to that effect and even if the caseworker had admitted violations of regulations if if this court looks at those regulations uh it was it was a fact a situation where the court had agreed that was in leslie's best interest to remain with the foster family so the trial court even after the fact had said this was working out well so it's a situation where the regulations are not necessarily violated if the best interest and the problems it was not a situation i don't think that the foster parents were just trying to dump the older child just because i think the record will show that there was in fact some sort of behavioral problems or issues arising in that household that resulted there in their decision and that dcfs did in fact try to remove leslie as well however the foster family took a service appeal and won and also had a trial court ruling in the foster family's favor um so all that caused these siblings to become apart and so if it's in leslie's best interest to remain with that particular foster family and it's not in paris's best interest or leslie's best interest for them to reside together then that's not a ground for overturning the best interest determination either so for those reasons uh this court has no other questions i uh request this court uh to affirm and thank you for your time thank you miss brooks mr novick rebuttal please i have a question for you suppose this court overturned the unfitness findings that totally remove dcfs from this matter or do they retain certain monitoring authority could you order that um well if you're overturning it because you're finding there's no need for a sex offender evaluation and treatment the caseworker testified if that were true i could transition these hit these kids home today that's what she did testify to the best interest if that wasn't the issue the kids could go home because he's done everything else and that would end dcfs's involvement altogether hope so um would it the judge would have to find that i have to make some findings but sure um miss brooks did make some interesting points she said i don't want you to miss a couple of steps and i want to help her remember those steps we have a psychological evaluation it did not address the fact that it had been 20 years since his offense it did not affect address the fact and she's not a sex offender it did not address the fit a sex offender evaluator it did not address the fact of his young age at the time of the offense and all the literature involved there that he was placed on probation ordered to do treatment and successfully completed probation that wasn't addressed so we have one little step where she said he might need it and we've taken that and blown that up and then we come to dr sheer and with with regard to dr sheer counsel did make reference to some actuarial numbers did you look at those if you believe dr sheer the logical explanation of of his numbers are eventually he's 100 likely to commit a sex offense because the numbers only go up over time despite the fact that it's been the numbers he decided were it's five percent likely he'll reoffend within five years eleven percent in ten years well obviously the numbers keep going up he's going to offend but he hasn't offended it's illogical i'll leave it at that um what does best interest mean i'm going to suggest it includes a sibling bond it it does not include inexperienced foster parents who refuse to be trained or a case worker who refuses to give them training that's my humble suggestion and you know for those of us that work in this system every day the integrity of the rules are important because if a parent doesn't follow that service plan to the letter we all know what happens they get terminated if the department blows off their rules is there a reason for their rules the rules come from social science research and in a footnote to my brief on page seven i cite a bunch of cases where i've made this argument before and the case has been decided under for other reasons the last thing i want to say is did the older kid have behavioral problems well the casa accused her of manipulating the system when the kid said these people don't want me two weeks later she was out she the kid is accused of manipulating the system we have foster parents that don't want her we have a casa that doesn't have a clue and this kid has now been moved and taken away from her brother and i ask you again what does matter under advisement and the court stands in recess